**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

───────────────────────────────

JOSHUA CONKLIN,

                  Plaintiff,

        v.                                No. 9:14-CV-01098
                                                 (GLS/CFH)

M. BOWEN, et al.,

                  Defendants.

───────────────────────────────

**APPEARANCES:**                           **OF COUNSEL:**

Joshua Conklin
Plaintiff pro se
16-A-1104
Collins Correctional Facility
P.O. Box 340
Collins, New York 14034

Hon. Eric T. Schneiderman          LYNN M. KNAPP BLAKE, ESQ.
Attorney General for the
State of New York
Attorney for Defendant
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL,**
**U.S. Magistrate Judge**

### REPORT-RECOMMENDATION AND ORDER[1]

      Plaintiff pro se Joshua Conklin brings this action seeking monetary damages

pursuant to 42 U.S.C. § 1983.  Plaintiff's initial complaint was filed on September 5, 2014.

Dkt. No. 1 ("Compl.").  Based on plaintiff's failure to attend scheduled proceedings, including

───────────────────

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

depositions and a discovery conference, defendants moved to dismiss for failure to prosecute pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 41(b), and for monetary sanctions pursuant to Fed. R. Civ. P. 37. Dkt. No. 37. In a Report-Recommendation and Order ("R. & R.", Dkt. No. 41) dated April 25, 2016, the undersigned recommended denying defendants' motion to dismiss, and granting their request for sanctions. R. & R. at 8. On July 27, 2016, the R. & R. was adopted in its entirety. Dkt. No. 46. Plaintiff was ordered to pay $450.00 within ninety (90) days of the District Judge's Order, to compensate defendants for the court reporter fees incurred at the depositions for which plaintiff failed to appear. Id.

On November 28, 2016, after plaintiff failed to pay the monetary sanction ("Defs.' Memo.", Dkt. No. 52-11 at 3),[2] defendants moved again to dismiss pursuant to Fed. R. Civ. P. 41, for failure to prosecute, or, in the alternative, pursuant to Fed. R. Civ. P. 56, for partial summary judgment on the claim of deliberate indifference against Dr. Ramineni. Dkt. No. 52. Defendants contend, as an alternative argument in the motion for partial summary judgment, that Dr. Ramineni is entitled to qualified immunity. Defs.' Memo. at 8. Plaintiff opposed the motion. Dkt. No. 56. It is recommended that defendants' motion to dismiss be denied, and that the alternative motion for partial summary judgment be granted, for the reasons that follow.

## I. Motion to Dismiss for Failure to Prosecute

Despite this Court's Order providing a discovery deadline of August 5, 2015 (Dkt. No.

---

[2] Pagination used for Defs.' Memo. is the internal pagination of the memorandum.

13 at 5), plaintiff failed to appear for three depositions, on July 14, July 31, and September 30, 2015. Affirmation of James J. Seaman, Esq. (Dkt. No. 37-1) ("Seaman Aff.") ¶¶ 8, 14, 22. Over these three occasions, defendants incurred $450.00 of court reporter expenses. Id. ¶ 11, 15, 24. Plaintiff also failed to participate in a scheduled discovery conference. Dkt. Entry Dated Aug. 18, 2015. At all stages, plaintiff was warned by the Court that his failure to respond, participate, and appear could result in sanctions up to and including dismissal of his case. R. & R. at 2-3. In part, the dispute over plaintiff's degree of involvement stems from multiple changes of address (Dkt. Nos. 29, 35, 48). Plaintiff cites domestic incidents and an uncertain living arrangement as his reasons for failing to receive or reply to the mailed notices. Dkt. No. 44. at 1. Regardless, plaintiff's compliance has been inconsistent, and he has yet to pay the court-ordered sanction. Defs.' Memo. at 3. Although plaintiff opposed the pending motion (Dkt. No. 56), he failed to dispute defendants' Statement of Material Facts (Dkt. No. 52-8) ("Defs.' SMF"), attaching only a memorandum broadly objecting to the motion. Dkt. No. 56.

### A. Legal Standard

Fed. R. Civ. P. 41(b) permits a court to dismiss an action for a plaintiff's failure to prosecute, or to comply with the Federal Rules or court orders. FED. R. CIV. P. 41(b). This Court has recognized that a plaintiff's failure to notify the court of a changed address can constitute a violation of 41(b). See Reeder v. Artus, No. 09-CV-575 (DNH/CFH), 2013 WL 2095795, at *2 (N.D.N.Y. Mar. 26, 2013) (internal citations omitted); see also Hardy v. Mid-State Corr. Facility, No. 9:08-CV-1352 (MAD/ATB), 2011 WL 2620449, at *2 (N.D.N.Y. June 9, 2011) (internal citations omitted). Due to the finality of dismissal, Rule 41(b) dismissals

are only granted in appropriately "extreme circumstances."  Lucas v. Miles, 84 F.3d 532,

535 (2d Cir. 1996).  Further, special lenience is shown to pro se plaintiffs such that courts

should be reluctant to dismiss a pro se plaintiff's claims on the sole ground of "procedural

deficiencies."  Id. (internal citations omitted); see also Spencer v. Doe, 139 F.3d 107, 112

(2d Cir. 1998) (internal citations omitted).  Courts assess five factors in determining whether

dismissal is warranted:

> (1) the duration of the plaintiff's failure to comply with the court order,
> (2) whether plaintiff was on notice that failure to comply would result in
> dismissal, (3) whether the defendants are likely to be prejudiced by
> further delay in the proceedings, (4) a balancing of the court's interest
> in managing its docket with the plaintiff's interest in receiving a fair
> chance to be heard, and (5) whether the judge has adequately
> considered a sanction less drastic than dismissal.

Lucas, 84 F.3d at 535 (citing Jackson v. City of New York, 22 F.3d 71, 74 (2d Cir. 1994));

Alvarez v. Simmons  Mkt. Research Bureau, Inc., 839 F.2d 930, 932 (2d Cir. 1988).


## B. Discussion[3]

In light of plaintiff's failure to pay the $450.00 sanction ordered by this Court,[4]

defendants have once again moved to dismiss for failure to prosecute.  Dkt. No. 52.

However, given the caution advised by the Second Circuit against dismissal in cases

involving pro se plaintiffs, the Court must carefully review the relevant factors.  Lucas, 84

F.3d at 535.

---

[3] All unpublished decisions cited within this Report-Recommendation and Order have been provided
to plaintiff pro se.

[4] Plaintiff has contended that "it is the duty of the court to order that the state collect the amount of
$450.00 from the plaintiff where [sic] the plaintiff is incarcerated."  Dkt. No. 56 at 3.  The Court has already
ordered plaintiff to pay the sanction by Order dated July 27, 2016 and signed by Senior District Judge Gary
Sharpe, and plaintiff's obligation remains without any need for a further order of the Court.  Dkt. No. 46.

With regard to the first factor, the duration of non-compliance, two aspects of the delay are assessed: whether the delay or failures were the plaintiff's fault, and for what duration the non-compliance persisted. Jackson, 22 F.3d at 75. Plaintiff claims that he never received certain of the Court's mailings, and that he is unable to pay the $450.00 sanction because he is an inmate. Dkt. No. 44 at 1-2. However, courts do not allow the mere status of incarceration to "absolve" a plaintiff of his duty to move his case forward. See, e.g., West v. City of New York, 130 F.R.D. 522, 526 (S.D.N.Y. 1990) (quoting Snavley v. Redman, 107 F.R.D. 346, 348 (E.D. Mich. 1985)). The Local Rules of Practice for the Northern District of New York ("N.D.N.Y.L.R.") provide that inaction for four months is "presumptive evidence of lack of prosecution." N.D.N.Y.L.R. 41.2(a). Plaintiff failed on two occasions to promptly notify the Court of a change of address (Dkt. Nos. 28, 42), causing mail to be returned as undeliverable. Plaintiff has, however, submitted notice of a change of address on three occasions. Dkt. Nos. 29, 35, 48. Moreover, plaintiff has responded to defendants' motions and filed objections to the Court's previous order. Dkt. Nos. 39, 44, 56. The most prominent example of plaintiff's non-compliance is his failure to pay the court-ordered sanction that was due late in October 2016. Dkt. No. 46 at 3.[5]

In demarcating a period of duration of non-compliance that warrants dismissal, courts have reached different results, depending on the allocation of responsibility. See, e.g., Nita v. Conn. Dep't of Envtl. Protection, 16 F.3d 482, 483, 486 (2d Cir. 1994) (finding that a delay caused in part by the actions of the court could not be held against the plaintiff, who was pro se for a time); Hanil Bank v. James Martin Supermarkets, Inc., No. 88 CIV. 7531

---

[5] See supra footnote 4, reminding plaintiff of his Court-ordered duty to pay the $450.00 sanction without any further order of the Court or action on the part of the defendants.

(MJL), 1996 WL 19000, at *2 (S.D.N.Y. Jan. 17, 1996) (denying dismissal even though the plaintiff had been inactive for more than five years, because the defendants had consented to placing the case on the court's suspense docket); West, 130 F.R.D. at 523, 526 (finding that nineteen months of inaction was grounds for dismissal for a pro se plaintiff's case). Because the Court repeatedly advised plaintiff of his responsibilities and the possibility of dismissal if he did not comply, the failures are plaintiff's fault, not the defendants' or the Court's. See R. & R. at 2-3. However, plaintiff's compliance has been inconsistent, but not nonexistent. Without further balancing the factors, this factor alone is an insufficient ground on which to assess whether plaintiff's inactivity warrants dismissal.

As for the second factor, whether notice was given of the possibility of dismissal, plaintiff was repeatedly on notice that failure to comply with court orders or participate in scheduled proceedings could result in dismissal. R. & R. at 2-3. Specifically, this Court advised plaintiff that "serious consideration" had been given to dismissal, and reminded him of his "continuing obligation" to notify the Court of his current address, and to appear for depositions and court conferences pursuant to N.D.N.Y.L.R. 10.1(c)(2) and 41.2(a)-(b). R. & R. at 7. Similar disregard for conferences weighed in favor of dismissal in Perez v. Wallace, where the pro se plaintiff did not appear for three scheduled conferences despite warnings by this Court that such conduct might result in dismissal. No. 1:15-CV-240 (GTS/CFH), 2016 U.S. Dist. LEXIS 49128, at *1, *7 (N.D.N.Y. Apr. 11, 2016). This factor, therefore, weighs in favor of dismissal.

The third factor, prejudice against defendants, is not as clear: "It is true that '[p]rejudice to defendants resulting from unreasonable delay may be presumed . . . but in cases where delay is more moderate or excusable, the need to show actual prejudice is

-6-

proportionally greater.'" Webb v. Ashburn, No. 96 CIV. 325 (SAS), 1998 WL 2552, at *3 (S.D.N.Y. Jan. 5, 1998) (quoting Lyell Theatre Corp. v. Loews Corp., 682 F.2d 37, 43 (2d Cir. 1982)).  Here, defendants were inconvenienced by plaintiff's failures to appear since they were charged for court reporter fees totaling $450.00 when, on three occasions, plaintiff did not attend scheduled depositions.  R. & R. at 3.  Plaintiff's failure to attend these depositions and a discovery conference also delayed progress.  Id.  However, defendants have been able to proceed with their defense by submitting affirmations and exhibits (Dkt. No. 52).  Thus, prejudice to defendants, while present, is not extensive and, on balance, does not weigh significantly in favor of dismissal.

The fourth factor addresses the balance between the court's interest in functioning efficiently, and the plaintiff's interest in having an opportunity to be heard.  Lucas, 84 F.3d at 535 (internal citations omitted).  Plaintiff's action has been pending for nearly three years. See Compl.  The Court has accommodated plaintiff on multiple occasions, granting an extension for his response to the pending motion (Dkt. No. 55), and scheduling and rescheduling depositions and conferences at which plaintiff did not appear.  R. & R. at 2-3. However, the Second Circuit has held that "[t]here must be compelling evidence of an extreme effect on court congestion before a litigant's right to be heard is subrogated to the convenience of the court."  Lucas, 84 F.3d at 535-36.  Although plaintiff's failures have cause inconvenience and delay, there has not been a showing that plaintiff's failures to promptly communicate or attend the scheduled proceedings have had an "extreme effect" on the congestion of the Court.  See id.  Therefore, this factor cannot be held to weigh in favor of outright dismissal.  Cf. MacPherson v. Berman, No. 3:02CV1309 (SRU), 2006 WL 1359333, at *5 (D. Conn. May 16, 2006) (finding that extreme effects on congestion

warranted dismissal when combined with repeated extensions and allowances).

Finally, the Court must consider whether a lesser sanction than dismissal would be appropriate. Lucas, 84 F.3d at 535 (internal citations omitted). Particularly in the case of a pro se litigant, procedural failures on the part of the plaintiff should not warrant dismissal unless all other sanctions would be truly "impotent." Francis v. Morgenthau, No. 97 CIV. 5348 (SAS), 1998 WL 226186, at *2 (S.D.N.Y. May 4, 1998) (citing Chira v. Lockheed Aircraft Corp., 634 F.2d 664, 665 (2d Cir. 1980); Lucas, 84 F.3d at 535)). This Court has noted that monetary sanctions are "empty gestures in light of . . . in forma pauperis status." Reeder, 2013 WL 2095795, at *3. Although such a sanction has proven to be similarly ineffective given plaintiff's IFP status and his current failure to pay, unlike the plaintiff in Reeder, the plaintiff herein has indicated that he wishes to pursue his action. Id. at *2; cf. Dkt. No. 56. Further, as the Second Circuit has outlined, "the district court has the means to move this case forward efficiently without the cudgel of extreme sanctions. The court has the power to set and enforce reasonable deadlines for discovery and motion practice." Baptiste v. Sommers, 768 F.3d 212, 219 (2d Cir. 2014). In the present case, there is thus no need to impose the sanction of dismissal, since the Court continues to set and enforce deadlines. Plaintiff's failures to comply will adversely affect his ability to successfully pursue his claims, but these failures have not seriously disrupted the Court's ability to efficiently manage its calendar. Cf. id. Therefore, although the undersigned recognizes that plaintiff's conduct has been unacceptable, on close and careful balance of the required considerations, dismissal for failure to prosecute is not warranted in this case.

Moreover, all of these factors must be considered in light of plaintiff's pro se status, where the standard of review holds that on appeal, deference is only given to a district

court's dismissal when the circumstances are "sufficiently extreme."  Lucas, 84 F.3d at 535 (citing Nita, 16 F.3d at 487).  Plaintiff's failures do not fully reflect complete inaction or "a pattern of dilatory tactics"; rather, they are at least somewhat indicative of his difficulties in navigating the system and responding appropriately and completely.  See Gibbs v. Hawaiian Eugenia Corp., 966 F.2d 101, 109 (2d Cir. 1992) (quoting Lyell, 682 F.2d at 42); Salahuddin v. Harris, 782 F.2d 1127, 1132 (2d Cir. 1986) ("[P]ro se plaintiffs do in fact often frustrate the processes of litigation, but dismissal is justified only when they do so deliberately, not when they do so through misunderstanding.") (internal citations and quotation marks omitted).  Further, the Second Circuit has made clear that in pro se litigation, reviewing the case on summary judgment is generally preferred over Rule 41(b) dismissals.  See LeSane v. Hall's Sec. Analyst, Inc., 239 F.3d 206, 211 (2d Cir. 2001).

After careful weighing of all relevant factors, the undersigned determines that dismissal for failure to prosecute is not warranted at this time.  Accordingly, it is recommended that defendants' motion to dismiss for failure to prosecute be denied.

## II. Motion for Partial Summary Judgment

### A. Background

Plaintiff alleges that, while he was an inmate at Mid-State Correctional Facility, defendants Correction Sergeant M. Bowen and Corrections Officers T. Gavin and J. Dooley violated his constitutional rights under the Eighth Amendment through their use of excessive force, which resulted in multiple injuries.  Compl. ¶¶ 18-27.[6]  Plaintiff further alleges that

---

[6] Defendants are not seeking dismissal of the excessive force claims in their motion. Dkt. No. 52.

defendant Dr. Ramineni violated plaintiff's Eighth Amendment rights by showing deliberate indifference to plaintiff's medical needs resulting from those injuries. Id. ¶¶ 29-31. In response to defendant Dr. Ramineni's statement of material facts in support of his motion for partial summary judgment (Defs.' SMF), plaintiff responded only with a brief memorandum urging the Court to afford him an opportunity to be heard. Dkt. No. 56.

Where a plaintiff has opposed a motion for summary judgment without responding to any of the allegations of material fact, the defendant's statements are admitted as true unless they are controverted by "nonconclusory factual allegations in [p]laintiff's verified complaint." Shabazz v. Howard, 9:12-CV-1372 (NAM/TWD), 2017 WL 2387778, at *5 (N.D.N.Y. May 5, 2017) (citing McAllister v. Call, No. 9:10-CV-610 (FJS/CFH), 2014 WL 5475293, at *3 (N.D.N.Y. Oct. 29, 2014) and Douglas v. Perrara, No. 9:11-CV-1353 (GTS/RFT), 2013 WL 5437617, at *3 (N.D.N.Y. Sept. 27, 2013)).

### A. Plaintiff's Version of Events

In his complaint, plaintiff alleges that on August 17, 2012, his housing officer told him to report to the Adjustment Committee Office at around 6:30 A.M. Compl. ¶ 7. After receiving notice of a misbehavior report, plaintiff was told he would have a hearing; he then asked to see a sergeant. Id. ¶ 8. Shortly thereafter, defendants Bowen and Gavin arrived and violently restrained plaintiff, twisting his arm behind his back, shouting at him, and handcuffing him. Id. ¶ 9. Plaintiff was placed in the Special Housing Unit ("SHU"), and then moved to a "frisk" room where he was told to stand against the wall. Id. ¶¶ 10-11. Defendants Bowen, Gavin, and Dooley punched, kicked, and stomped on plaintiff, first striking his face and kidney area, and continuing the alleged assault after he fell to the

floor.  Id. ¶ 11.  Plaintiff was periodically unconscious; during one such interval, defendant Bowen used a knife to remove plaintiff's bloodied clothing.  Id. ¶ 12.  Plaintiff was then removed to a "cage" in the next room, where he was left "naked, badly beaten, and bleeding from multiple wounds."  Id. ¶¶ 12-13.

A Special Housing sergeant and a nurse interviewed plaintiff and examined and documented his injuries  at the start of the next duty shift.  Compl. ¶ 14.  The shift sergeant asked plaintiff if he wanted to hurt himself; plaintiff said that he did, leading the sergeant to believe that plaintiff was at risk for self-harm.  Id. ¶ 15.  Plaintiff spoke to mental health staff, and within about fifteen minutes, was placed in a mental health strip cell where he was "naked, beaten[,] and ignored for three days."  Id. ¶ 16.  Finally, plaintiff contends that he received no medical attention for his injuries during those three days.  Id.  He did not recognize the full extent of his alleged physical and psychological injuries until approximately one year after the alleged beating.  Id. at ¶ 17.  With regard to Dr. Ramineni, plaintiff alleges that Dr. Ramineni did not see him until approximately seventy-eight (78) hours after the incident, at which time he assessed "the nature and extent of the injuries recorded by his medical staff."  Id. ¶ 29.  Plaintiff alleges that he suffered "many contusions, cuts, and potential cracked ribs[.]" Id. ¶ 16.  He also alleges that he suffered "collateral nerve damage."  Id. ¶ 32.

## B. Defendant's Version of Events

In support of his motion for partial summary judgment, Dr. Ramineni set forth a statement of material facts which pertains solely to the deliberate indifference claim raised against him.  Def.'s SMF.  After the August 17, 2012 incident, plaintiff was examined by a

nurse and treated for injuries including slight swelling under the right eye, a superficial scratch on his forehead, and three abrasions: two on his back and one on his hand.  (Dkt. No. 52-9) ("Dec. of Dr. Ramineni") ¶ 2; (Dkt. No. 52-10) ("Ex. A") at 34.  During the next month, plaintiff repeatedly visited  a nurse, reporting issues including back pain; hip pain; various cold symptoms (chest congestion, sore throat); gastrointestinal/bowel upset and constipation; food allergies (specifically to fish); numbness in his toes; ingrown hair; heartburn; dandruff; athlete's foot; muscle spasms; and dry skin.  Dec. of Dr. Ramineni ¶¶ 5, 8-10, 12-14, 17-20, 22-25; Ex. A at 27-34.  On multiple occasions, the nurse reported that plaintiff was in no pain or "no acute distress."    Dec. of Dr. Ramineni ¶¶ 5, 10, 14, 17, 18, 25; Ex. A at 27, 30-32, 34.

Dr. Ramineni claims that he met with plaintiff on September 5, 24, and 27, 2012.  Dec. of Dr. Ramineni ¶¶ 15, 26-28; Ex. A at 24-27, 30.  Originally, plaintiff had a scheduled appointment with Dr. Ramineni on August 30, 2012, but when Dr. Ramineni went to plaintiff's cell, plaintiff was absent.    Dec. of Dr. Ramineni ¶¶ 1, 11; Ex. A at 32.   On September 5, Dr. Ramineni examined plaintiff for the injuries allegedly resulting from the underlying incident.  Dec. of Dr. Ramineni ¶ 15; Ex. A at 30.   Plaintiff complained about pain by his right eye and right iliac crest.  Id.  Dr. Ramineni observed no "obvious swelling" around plaintiff's eye, but observed that plaintiff "did appear to be walking slowly due to the pain in the area of his iliac crest."  Id.  Upon concluding that the iliac crest pain was musculoskeletal in origin, Dr. Ramineni prescribed ibuprofen.  Id.  Dr. Ramineni's last two meetings with plaintiff were in regard to a skin infection — a boil — for which Dr. Ramineni prescribed antibiotics.  Dec. of Dr. Ramineni ¶¶ 26-28; Ex. A at 24-27.

Because plaintiff was moved to another correctional facility, his last visit with Dr.

Ramineni was September 27, 2012, when Dr. Ramineni conducted a follow-up appointment regarding plaintiff's skin infection.  Dec. of Dr. Ramineni ¶¶ 27, 28; Ex. A at 24.  In his declaration, Dr. Ramineni stated that inmate appointments are not scheduled by physicians, but by others, and the physician only follows his or her schedule.  Dec. of Dr. Ramineni  ¶ 6.  Until the appointment or a review of the patient's chart, the physician "will have no knowledge of the patient's condition."  Id.  Further, Dr. Ramineni stated that rest is the ultimate treatment for musculoskeletal pain, but added that pain relievers could be used in the short-term.  Id. ¶ 16.  He also stated that the "non-specific and transient numbness [in plaintiff's toes] . . . , without any involvement of the leg, thigh, or gluteal area, does not generally call for further [medical] workup."  Id. ¶ 21.

### C. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact, it was supported by affidavits or other suitable evidence, and the moving party is entitled to judgment as a matter of law.  The moving party has the burden of showing the absence of disputed material facts by providing the court with portions of pleadings, depositions, and affidavits which support the motion.  FED. R. CIV. P. 56 (c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).  Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences drawn in favor of the non-moving party.  Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997) (internal citations omitted).

The party opposing the motion must set forth facts showing that there is a genuine

issue for trial, and must do more than show that there is some doubt or speculation as to

the true nature of the facts.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475

U.S. 574, 586 (1986) (internal citations omitted).  For a court to grant a motion for summary

judgment, it must be apparent that no rational finder of fact could find in favor of the

non-moving party.  Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219,

1223-24 (2d Cir. 1994) (internal citations omitted); Graham v. Lewinski, 848 F.2d 342, 344

(2d Cir. 1988) (internal citations omitted).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford

the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d

471, 477 (2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is
> entitled to "special solicitude," . . . that a pro se litigant's submissions
> must be construed "liberally,". . . and that such submissions must be
> read to raise the strongest arguments that they "suggest," . . . .  At the
> same time, our cases have also indicated that we cannot read into pro
> se submissions claims that are not "consistent" with the pro se
> litigant's allegations, . . . or arguments that the submissions
> themselves do not "suggest," . . . that we should not "excuse frivolous
> or vexatious filings by pro se litigants," . . . and that pro se status "does
> not exempt a party from compliance with relevant rules of procedural
> and substantive law" . . . .

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d

185, 191-92 (2d Cir. 2008).

The standard is somewhat modified where the non-moving party has failed to

oppose any of the movant's statements of material fact, either by failing to file a response

or by filing a statement that neither admits nor denies any of the movant's statements of

material fact.  The Local Rules provide that "[t]he Court shall deem admitted any properly

supported facts set forth in the Statement of Material Facts that the opposing party does

not specifically controvert."  N.D.N.Y.L.R. 7.1(a)(3); see Belile v. Griffin, No. 9:11-CV-0092 (TJM/DEP), 2013 WL 1776086, at *1 n.1 (N.D.N.Y. Feb. 12, 2013) (citing N.D.N.Y.L.R. 7.1(a)(3); Elgamil v. Syracuse Univ., No. 99-CV-0611, 2000 WL 1264122, at *1 (N.D.N.Y. Aug. 22, 2010)); Shabazz, 2017 WL 2387778, at *5 (internal citations omitted).  However, if the non-movant specifically controverts the movant's statements of fact by opposing "nonconclusory factual allegations" in a verified complaint, these statements will be considered in determining whether a dispute as to a material fact remains.  Shabazz, 2017 WL 2387778, at *5 (internal citations omitted).

### D. Discussion

Plaintiff claims in his opposing memorandum that "due to circumstances . . . [he] was never notified nor given the chance to respond [with regard to his case]."  Dkt. No. 56 at 1-2.  Courts must take special care to accommodate pro se litigants in the context of summary judgment motions: it should be "reasonably apparent" based on the circumstances and papers filed, that the pro se litigant "understood" the nature and consequences of the motion.  Sawyer v. AFGE, 180 F.3d 31, 35 (2d Cir. 1999).  Plaintiff's argument that he was not given notice or a chance to respond is manifestly untrue; plaintiff was served with notice of motions, orders, and other developments throughout the case. See, e.g., Dkt. Nos. 5, 10, 13, 25, 31, 33.  When plaintiff's address changed on three occasions, updated docket reports were subsequently served to plaintiff's new addresses. See Dkt. No. 29; Dkt. Entry Dated Oct. 14, 2015; Dkt. No. 48.  When plaintiff's address changed for the third time, the District Judge's Order was re-served to plaintiff as it had previously been returned as undeliverable.  Dkt. Nos. 46, 48.  Further, plaintiff was made

aware of the nature of consequences of failing to respond by the information attached to

defendants' Notice of Motion (Dkt. No. 52), where he was informed that if he did not

respond to defendants' SMF, he could be deemed to have conceded their version of facts.

Dkt. No. 52.  Plaintiff received this notice, as evidenced by the fact that he submitted a

response in opposition, albeit an incomplete one.[7]  Dkt. No. 56.  Therefore, plaintiff's

arguments that he was not on notice regarding the developments his case, or the

consequences of his inaction are without merit.

　　　　In response to defendants' statement of material facts in support of their motion for

partial summary judgment (Def.'s SMF), plaintiff responded only with a brief memorandum

urging the Court to afford him an opportunity to be heard.  Dkt. No. 56.  The Second Circuit

has held that "failure to oppose a motion for summary judgment alone does not justify the

granting of summary judgment." Vermont Teddy Bear Co. v. 1-800-BEARGRAM Co., 373

F.3d 241, 244 (2d Cir. 2004).  Plaintiff has not completely failed to oppose the motion, but

he has neglected to submit a response to defendants' SMF in accordance with

N.D.N.Y.L.R. 7.1(a)(3).  Non-moving parties are instructed to "mirror the movant's

Statement of Material Facts by admitting and/or denying each of the movant's assertions in

matching numbered paragraphs."  N.D.N.Y.L.R. 7.1(a)(3).  Each denial must be supported

by the record, and if facts contained in the moving parties' statement are not disputed, the

---

[7] Plaintiff argues that he is entitled to a hearing before the Court regarding the potential dismissal of his case, thus allowing him to present additional evidence.  Dkt. No. 56 at 1-4.  Plaintiff is not entitled to a hearing or oral argument before the Court.  See N.D.N.Y.L.R. 7.1(h) ("The parties shall not appear for oral argument on motions that they make returnable before a Magistrate Judge on the scheduled return date of the motion unless the Magistrate Judge sua sponte directs or grants the request of any party for oral argument.").  Plaintiff's opportunity to present arguments opposing dismissal was in his motion in opposition.  Plaintiff was given notice of his duty to oppose the motion and the consequences of failing to oppose.  Dkt. No. 52.

Court shall deem them admitted.  Id.; see also Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) (citations omitted).  However, since all inferences must drawn in favor of the non-moving party, the Court may not rely solely on the movant's version of facts when granting or denying summary judgment.  See Skubel, 113 F.3 at 334; Giannullo, 322 F.3d at 140 (citing Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 74 (2d Cir. 2001)).  Here, all of the facts set forth in defendants' statement of material fact otherwise uncontroverted by plaintiff are supported by the record.  See generally, Defs.' SMF, Dkt. Nos. 52-9, 52-10.

The Eighth Amendment protects prisoners from "cruel and unusual punishment," including "deliberate indifference to a prisoner's serious medical needs."  U.S. CONST. amend. VIII; Miller v. Ramineni, No. 9:14-CV-1351 (DNH/CFH), 2016 WL 1253684, at * 4 (N.D.N.Y. Feb. 29, 2016) (internal citations omitted).  A disagreement about what type of treatment is most appropriate does not constitute deliberate indifference on the part of a defendant physician.  Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.") (internal citations omitted).  Even conduct arising to the level of negligence does not constitute a claim of deliberate indifference under the Eighth Amendment.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.").  Further, in assessing whether defendants were

deliberately indifferent to a plaintiff's serious medical needs, there is an objective prong and a subjective prong, and a plaintiff must meet both.   Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).  The objective prong looks to the seriousness of the prisoner's injury, and the subjective prong assesses the defendant's culpability.  Hathaway, 37 F.3d at 66 (internal citations omitted).

Plaintiff's and defendant's versions of events do not substantially conflict.  See generally Compl.; Def.'s SMF.  Plaintiff, in his complaint,[8] disputes Dr. Ramineni's statement that he first saw plaintiff on September 5, 2012.  Def.'s SMF ¶ 12.  Plaintiff claims that Dr. Ramineni saw him within approximately seventy-eight hours of the August 17, 2012 incident.  Compl. ¶ 29.  However, viewing the facts in the light most favorable to the plaintiff, defendant's version should be adopted because the delay he acknowledged was longer than that which plaintiff alleged.

Plaintiff alleges in his complaint that he suffered injuries including cuts, contusions, and "potentially cracked ribs," resulting in hip pain, back pain, and collateral nerve damage.  Compl. ¶¶ 16, 32.  However, defendant Dr. Ramineni's statements of material fact indicate that plaintiff never sought treatment for cracked ribs.  See generally Def.'s SMF.  Plaintiff did not dispute this.  See generally Compl.; Dkt. No. 56.  Defendant states that a nurse examined plaintiff after the August 17, 2012 incident and found slight swelling, and minor scratches and abrasions, but that was the only occasion where plaintiff was treated or sought treatment for these issues.  Id. ¶ 2.  Plaintiff did repeatedly complain of back pain and hip pain, as well as numbness in his toes.  See, e.g., id. ¶¶ 3, 5, 6, 12, 15. 16, 18.  To

_____

[8] Plaintiff declared under penalty of perjury that the statements in his complaint were true and signed the complaint.  Thus, the Court will consider it to be a verified complaint.  See Compl. at 7.

the extent that plaintiff suggests these ailments arose out of the August 17, 2012 incident, plaintiff does not dispute that Dr. Ramineni evaluated and treated these ailments.  Id. ¶¶ 12, 13, 18.

Notably, plaintiff failed to provide evidence to support his description of his injuries, whereas defendant supported his statements with medical records and his declaration. See Compl. ¶ 16; see generally Def.'s SMF; Dec. of Dr. Ramineni; Ex. A.  In recommending partial summary judgment for defendant on the claim of deliberate indifference against Dr. Ramineni, the undersigned determines that no material facts remain in dispute.  Cf. Gallo, 22 F.3d at 1223 (internal citations omitted).

Nothing in defendant's SMF suggests that Dr. Ramineni's conduct in treating plaintiff met either prong of the deliberate indifference analysis.  The objective prong—seriousness—requires the condition to be one that "may produce death, degeneration, or extreme pain."  Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (internal citations omitted).  Plaintiff's frequent visits to a nurse do not demonstrate serious medical needs; he was repeatedly described as not being in acute distress, and most of his objectively minor ailments were related to congestion and indigestion.  See, e.g., Def.'s SMF ¶¶ 2, 3, 7, 14.  Defendant's undisputed statements do not indicate that any of plaintiff's medical issues potentially related to the August 17, 2012 incident worsened over time.  See generally Def.'s SMF.  Further, there is no indication that Dr. Ramineni failed to treat plaintiff—when Dr. Ramineni examined plaintiff, he prescribed pain relievers as short-

term relief for plaintiff's musculoskeletal pain.[9]  Id. ¶¶ 12, 13.  On another occasion, Dr.

Ramineni treated plaintiff for a skin infection.  Id. ¶ 23.  At no point did Dr. Ramineni show

"deliberate indifference to [plaintiff's] serious medical needs," because the undisputed SMF

does not indicate that plaintiff's medical needs were serious in nature under the objective

prong of the deliberate indifference analysis.  Miller, 2016 WL 1253684, at * 4 (internal

citations omitted); see generally, Def.'s SMF.

        The undersigned next addresses Dr. Ramineni's alleged culpability.  The Supreme

Court established the test for culpability in Farmer v. Brennan.  To be liable, it must be

determined that "[T]he official knows of and disregards an excessive risk to inmate health

or safety; the official must both be aware of the facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must also draw the inference."

511 U.S. 825, 837 (1994).  Here, plaintiff appears to allege that his health was at risk

because he was not permitted to see Dr. Ramineni for almost three weeks after the August

17, 2012 incident.  Def.'s SMF ¶ 15.  Even if this delay had been excessive, the undisputed

facts demonstrate that Dr. Ramineni was not in charge of his own schedule and did not

have input into how quickly he saw patients.  Def.'s SMF ¶ 4.  Further, his initial meeting

with plaintiff was delayed because plaintiff was not in his cell, not because of Dr.

Ramineni's actions.  Def.'s SMF ¶ 8.  Plaintiff does not dispute this claim.  The Supreme

Court has held that, to constitute deliberate indifference, the defendant must "intentionally

---

        [9] To the extent that plaintiff alleges that he was not aware of the full effect of his physical and
psychological injuries until one year after the August 17, 2012 incident, the undersigned concludes that this
does not change the analysis.  Plaintiff has failed to show, for the reasons detailed herein, that Dr. Ramineni's
conduct and treatment met either the subjective or objective prongs of the deliberate indifference analysis.
Therefore, plaintiff's attempt to claim that he suffered adverse effects that were not realized until one year
after the incident indicates, at most, possible negligence or a disagreement over the type of treatment, neither
of which satisfy a claim of deliberate indifference.  See Estelle, 429 U.S. at 106; Chance, 143 F.3d at 703.

deny[] or delay[] access to medical care or intentionally interfer[e] with the treatment once prescribed." Estelle, 429 U.S. at 104; see also Evans v. Manos, 336 F. Supp. 2d 255, 261-62 (W.D.N.Y. 2004) (finding that a thirty-day delay between the initial incident and the defendant doctor's first examination of the plaintiff did not constitute deliberate indifference because the plaintiff failed to show harm caused by the delay).  There is no such evidence here.  Therefore, based on these uncontested facts, the undersigned concludes that Dr. Ramineni did not deliberately disregard any "excessive risk" to plaintiff's health.

Thus, even upon a consideration of the facts in the light most favorable to the plaintiff, there remains no issue of material fact, and Dr. Ramineni is entitled to judgment as a matter of law.  Accordingly, it is recommended that defendant's motion for partial summary judgment be granted.

### E. Qualified Immunity

As an alternative basis for dismissal, defendant Dr. Ramineni argues that he is entitled to qualified immunity.  Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (internal citations omitted); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (internal citations omitted).

> [A] decision dismissing a claim based on qualified immunity at the summary judgment stage may only be granted when a court finds that an official has met his or her burden demonstrating that no rational jury could conclude (1) that the official violated a statute or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.

Coollick v. Hughes, 699 F.3d 211, 219 (2d Cir. 2012) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)).  The Supreme Court has granted district courts "discretion to decide which of the two prongs . . . to tackle first [in order to] . . . save[] judicial resources by avoiding unnecessary decisions whether certain conduct violates a constitutional or statutory right, when it is beyond reproach that the conduct was not objectively unreasonable in light of existing law."  Coollick, 699 F.3d at 219-20 (internal quotation marks and citations omitted).

A constitutional right is clearly established if it is both reasonably specified and affirmed by both Supreme Court and Second Circuit case law and understood to be viewed by a reasonable defendant as unlawful under the status of the law at the relevant time in question.  Looney v. Black, 702 F.3d 701, 706 (2d Cir. 2012) (internal citations omitted).  Such an inquiry is context-specific, looking at "the contours of the right" which is alleged to be protected so that "the very action in question [need not] ha[ve] previously been held unlawful; but . . . in the light of pre-existing law the unlawfulness must be apparent."  Doninger v. Niehoff, 642 F.3d 334, 345-46 (2d Cir. 2011) (internal quotation marks and citations omitted).

Having determined that Dr. Ramineni is entitled to judgment as a matter of law, the undersigned need not address in detail the qualified immunity claim.  See, e.g., Wright v. Genovese, 694 F. Supp. 2d 137, 163 (N.D.N.Y. 2010).  However, as the undersigned concludes that no constitutional violation occurred, Dr. Ramineni would be entitled to summary judgment on this claim.  See Aiken, 236 F. Supp. 2d at 230.  Accordingly, in the alternative, it is recommended that Dr. Ramineni's motion for partial summary judgment be granted on the basis of qualified immunity.

## IV. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED**, that defendants' motion, insofar as it seeks dismissal for failure to prosecute (Dkt. No. 52), be **DENIED**; and it is further

**RECOMMENDED**, that defendant Dr. Ramineni's motion, insofar as it seeks for partial summary judgment (Dkt. No. 52), be **GRANTED**, and that Dr. Ramineni be terminated from this action; and it is

**ORDERED**, that the Clerk of the Court serve copies of this Report-Recommendation and Order on the parties in accordance with Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

**IT IS SO ORDERED.**

Dated:  July 11, 2017
          Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

-23-